No. 44,039

George B. Emery, Jr., Charles R. Bennett, Cecil D. Hunter, T. E. Lundberg, and Robert E. McKee, General Contractor, Inc., d/b/a McKee-Emery Group, Joint Venture, Fort Riley, Kansas, *Appellee*, v. The Director of Revenue of the State of Kansas, *Appellant.*

(402 P. 2d 305)

Opinion filed May 15, 1965.

*C. A. Arterburn,* of Topeka, argued the cause, and *Dale E. Dixon,* of Topeka, was with him on the brief for the appellant.

*Ervin G. Johnston,* of Kansas City, argued the cause, and *Jack A. Quinlan,* of Topeka, *Lee E. Weeks, Leonard O. Thomas, J. D. Lysaught, Richard Millsap, Robert H. Bingham, Miles D. Mustain, Roger D. Stanton,* all of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

Price, J.: This appeal arises under the Kansas compensating tax law—commonly referred to as the "use" tax.

The question presented is whether the materials which were purchased outside the state of Kansas and used in the construction of the Capehart Housing Project on the Fort Riley Military Reservation were subject to the tax.

The Director of Revenue and the Board of Tax Appeals ruled that such materials were subject to the tax. The "McKee-Emery Group," the housing contractors (hereafter referred to as plaintiffs), appealed to the district court. The court reversed the decision of the Board of Tax Appeals and held the imposition of the tax to be null and void.

The Director has appealed.

We regard certain procedural questions raised by the parties as

being of no material consequence and will consider the case on the merits.

This is the third appearance in this court of litigation concerning the housing project on the Fort Riley Military Reservation, located in Riley and Geary counties.

In *First National Bank in Dallas v. Lowman,* 193 Kan. 349, 395 P. 2d 313, the question was whether the mortgage held by plaintiff bank on the property was subject to the mortgage registration fee as a condition precedent to being filed for record. We held that it was.

In *United States v. Board of County Commissioners,* 194 Kan. 614, 400 P. 2d 685, the question was whether the improvements on the housing project in existence on January 1, 1962, were subject to taxation by Riley county under the provisions of G. S. 1961 Supp., 27-102b and 27-102c (now K. S. A. 27-102b and 27-102c), or whether such improvements were exempt from taxation under G. S. 1949, 79-201 *Fifth,* which exempts from taxation all property belonging exclusively to the United States. We held such improvements to be exempt under the last mentioned statute.

The procedural steps in the federal plan and scheme in accomplishing the construction of the military housing in question are related in those cases and are incorporated herein by reference.

After this case reached the district court on appeal from the ruling of the Board of Tax Appeals, the court appointed Roy N. McCue, a member of the Topeka bar, as referee, to hear the evidence. The referee made exhaustive findings of fact and conclusions of law, which, after review by the court, were approved and adopted by it.

Keeping in mind the entire background of the matter as set out in the above mentioned cases, we summarize briefly the facts as they pertain to the question presented here.

In furtherance of the construction of the housing project, plaintiffs, as the housing contractors, during the period from April 1, 1961 to August 4, 1961, purchased building materials from vendors outside the state of Kansas, and it is upon the purchase price of such materials that the Director levied the compensating tax in the amount of $22,044.45, with interest. The basic contract under which the housing was constructed was prepared by and executed by the government. The work performed by plaintiffs was required to be done to the satisfaction of the government and payment to plaintiffs for work under the contract was to be made only on the authorization of the government. Payments were made by the gov-

ernment to plaintiffs once each month for work done and materials furnished during the preceding month, and title to all materials and work for which such progress payments were made vested in the government upon such payments. Plaintiffs were required to furnish to the government for approval the name of the manufacturer of machinery or other equipment contemplated to be incorporated into the housing project, and plaintiffs submitted full information concerning materials and samples of such materials to the government for approval when so directed. All materials were subject to inspection by the government and were subject to rejection unless they met approved government specifications. All materials were purchased at a price "F. O. B. Jobsite, Fort Riley, Kansas," and the purchase orders contained a notation to the effect the materials were for the construction of "Armed Services Housing Project Consisting of 867 Capehart Housing Units at Fort Riley, Kansas." The purchase orders also provided that the subcontract was subject to approval by the Department of the Army and the Federal Housing Administration, referred to therein as the "Owners." The government maintained personnel on the jobsite for the purpose of inspecting the materials and the work performed in order to determine whether they met the housing contract specifications. The progress payments made to plaintiffs each month were based upon a monthly inventory of the materials and work done, approved by the government, and such payments were made out of the mortgage loan proceeds guaranteed by the government. The government took possession of the housing units as they were completed and used the same for the housing of military personnel. The materials in question could not be diverted by plaintiffs to some purpose other than the performance of the housing contract with the government, and all materials so purchased were used and consumed in fulfillment of the contract between plaintiffs and the government.

As conclusions of law the court held that the government was in fact the purchaser of the materials in question, was vested with full ownership thereof, that the use of the materials by plaintiffs was merely in the capacity of a bailee who had possession of the property to accomplish the purpose of the government, as bailor, and that the government was the "user, storer or consumer" of the property at the time it was used, stored and consumed on the Fort Riley Military Reservation within the meaning of the compensating tax act, and that plaintiffs exercised no privilege of use, storage or consumption. The court further held that the housing contract and the operations

under it were the means by which the government acquired the military housing, and that the construction of such military housing and the use of such materials by plaintiffs was not incident to the ownership of such property—the government having all of the incidents of ownership thereof from the moment of delivery at the jobsite by the out-of-state vendors.

As a consequence of the foregoing it further was held that the transactions in question were outside the scope of the compensating tax law and that the government, being immune from taxation by the state—the imposition of the tax by the Director was erroneous.

With respect to the basic principle involved, this case is not unlike that of *General Motors Corporation v. State Comm. of Rev. & Taxation,* 182 Kan. 237, 320 P. 2d 807, (cert. den. 358 U. S. 875, 3 L. ed. 2d 105, 79 S. Ct. 115) in which the state attempted to levy a compensating (use) tax on the purchase price of materials purchased by plaintiff corporation outside the state for use by it in the manufacture of military aircraft pursuant to a contract between it and the government. The opinion (pp. 242, 243) traces the background and reasons leading to the enactment of our compensating tax law, and sets out or refers to pertinent sections of the law which, in all material parts, are applicable to the question before us. For that reason we do not encumber this opinion with verbatim quotation of the various sections. Particular reference was made to G. S. 1949, 79-3702 (*c*) [later appearing as G. S. 1961 Supp., 79-3702 (*c*) and K. S. A. 79-3702 (*c*)], which provides that:

"The word 'use' means and includes the exercise within this state by any person of any right or power over tangible personal property *incident to the ownership of that property,* . . ." (Emphasis supplied.)

It was said that because of the foregoing quoted provision the important factor to be considered was whether the corporation's *use* of the property was *incident to the ownership thereof.* The facts established—and it was so held—that the contracts involved, and the operations under them, were merely the means by which the government purchased the property and equipment for the corporation's use in manufacturing military aircraft for the government, that is, the *use* of such property by the corporation was merely to accomplish the purpose of the owner—the production of military aircraft for the government, and that the corporation's use of the

property was not incident to the ownership of the property—and therefore was not subject to the compensating (use) tax.

The Director relies in part on a section of the Retailers' Sales Tax Act [G. S. 1961 Supp., 79-3602 (*m*)], which provides that sales of tangible personal property to contractors of materials and supplies for use by them in erecting structures for others are sales for final consumption. This provision would support his contention in situations where there were retail sales to contractors for use by them in erecting structures for others—but not where—as here—the contractor's use of the property was not "incident to the ownership of that property." [79-3702 (*c*), above.]

In addition to what was said and held in the *General Motors Corporation* case, above, and which we believe is controlling here—in the recent *United States* case, above, it was said with respect to this military housing project that the manufacturer—builder corporations were created to function solely for governmental purposes serving no purpose independent of that of the government, and, being mere instrumentalities of and beneficially owned by the government, were immune from imposition of the state tax.

In passing, we note that the courts of Michigan and Florida have passed on a similar question and have held such sales of materials to be exempt from state taxation. See *Knapp-Stiles v. Dept. of Revenue*, 370 Mich. 629, 122 N. W. 2d 642, (1963); *Green v. Eglin AFB Housing Inc.*, (Fla.) 104 So. 2d 463 (1958), and *Green v. Perini-Westward Developers, Inc.*, (Fla.) 121 So. 2d 462 (1960).

The judgment is affirmed.